**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**


| | | |
|---|---|---|
| ROBERT SMITH, | ) | CASE NO. 1:09-cv-2130 |
| | ) | |
| Plaintiff, | ) | |
| | ) | MAGISTRATE JUDGE |
| v. | ) | VECCHIARELLI |
| | ) | |
| MICHAEL J. ASTRUE, | ) | |
| Commissioner of Social Security, | ) | |
| | ) | **MEMORANDUM OPINION AND** |
| Defendant. | ) | **ORDER** |

Plaintiff, Robert Smith, challenges the final decision of Defendant, Michael J.

Astrue, Commissioner of Social Security (the "Commissioner"), denying Plaintiff's

applications for a Period of Disability ("POD") and Disability Insurance Benefits ("DIB")

under Title II of the Social Security Act, 42 U.S.C. §§ 416(i) and 423 (the "Act").  This

Court has jurisdiction pursuant to 42 U.S.C. § 405(g).  This case is before the

undersigned United States Magistrate Judge pursuant to the consent of the parties

entered under the authority of 28 U.S.C. § 636(c)(2).

For the reasons set forth below, the Commissioner's final decision is AFFIRMED.

## I.  PROCEDURAL HISTORY

On March 8, 2004, Plaintiff applied for DIB alleging an onset date of January 17, 2004.  (Tr. 16.)  Plaintiff's application was denied initially and upon reconsideration.  (Tr. 16.)  On July 24, 2006, an administrative law judge ("ALJ") held a hearing (Tr. 40), and on September 8, 2006, the ALJ found Plaintiff not disabled (Tr. 44).

On September 15, 2006, Plaintiff protectively filed another application for disability benefits.  (Tr. 16.)  On February 21, 2007, the Appeals Council vacated the ALJ's decision on the first application and issued an order remanding the case for further evaluation.  (Tr. 68-71.)  On June 5, 2007, Plaintiff attended another hearing before a different ALJ.  (Tr. 16.)  A vocational expert testified along with Plaintiff.  (Tr. 664.)  The ALJ considered Plaintiff's initial application and the protectively filed application together.  (Tr. 16.)  On July 19, 2007, the ALJ found Plaintiff not disabled prior to July 17, 2007, but found Plaintiff disabled after July 17, 2007.  (Tr. 25.)

On August 11, 2009, the Appeals Council declined to review the ALJ's decision (Tr. 6.); therefore, the ALJ's decision became the Commissioner's final decision.  On September 15, 2009, Plaintiff timely filed this case in the United States District Court for the Northern District of Ohio.  (Doc. No. 1.)

Plaintiff asserts three assignments of error:  (1) the ALJ improperly relied on the Medical-Vocational Guidelines (the "Grids") to determine that Plaintiff was not disabled prior to July 17, 2007; (2) the Commissioner's finding that Plaintiff could have performed a significant number of jobs in the national economy before July 17, 2007, is not supported by substantial evidence because the ALJ's hypothetical to the VE did not accurately portray Plaintiff's limitations; and (3) the ALJ failed to give proper deference

2

to Plaintiff's treating physicians' opinions and failed to give good reasons for giving the treating physicians' opinions less weight than the other medical evidence.[1]

## II.  EVIDENCE

### A.  Personal and Vocational Evidence

Plaintiff was fifty-four years old on the date of his hearing before an ALJ.  (Tr. 98, 667.)  Plaintiff completed the Eleventh Grade.  (Tr. 685.)  His past relevant work experience includes work as a punch press operator and dye setter.  (Tr. 668, 685-86.)

### B.  Medical Evidence

#### 1.  Physical Condition

On March 26, 2003, Plaintiff injured his back at work.  (Tr. 156.)  A lumbar MRI revealed mild to moderate central canal stenosis at the L3-L4 vertebrae with associated moderate foraminal stenosis on the left side.  (Tr. 384.)  Thereafter, a lumbar x-ray confirmed degenerative disc disease at the L5-S1 vertebrae and degenerative changes in the lower spine.  (Tr. 257, 382.)

On January 23, 2004, Plaintiff presented to Dr. Teresa Larsen, D.O., at Cleveland Heights Medical Center with complaints of back and left leg pain, and tingling in his left leg.  (Tr. 465.)  Plaintiff reported that his leg pain and tingling worsened with standing and walking, but lessened with sitting or lying down.  (Tr. 465.)  Dr. Larson diagnosed Plaintiff with a lumbar strain and spinal stenosis.  (Tr. 465, 489.)

---

[1] The first and second assignments of error are derived from the substance of the first argument in Plaintiff's Brief, which is captioned "Whether the ALJ Properly Evaluated Plaintiff's Residual Functional Capacity in Determining that He Could Perform the Work of a Bench Assembler, Wire Worker, or Electronics Worker."  The third assignment of error constitutes two different, but related, issues that will be addressed together.

On March 4, 2004, neurosurgeon Dr. Dale Braun, M.D., examined Plaintiff at the request of Dr. Larson.  (Tr. 433.)  Plaintiff reported lower back pain that radiated down his left leg as well as complete numbness in his left foot, although walking, standing, and sitting made Plaintiff feel better.  (Tr. 433.)  Dr. Braun observed that Plaintiff's passive range of motion and upper extremity sensation were normal.  (Tr. 433.)  Plaintiff had palpable tenderness in his lower back with negative straight leg raising bilaterally.  (Tr. 433.)  Plaintiff's muscle strength was normal in his lower extremities, but he did have decreased sensation in his left leg.  (Tr. 433.)  Dr. Braun concluded that the MRI findings and Plaintiff's activity were inconsistent with Plaintiff's complaints.  (Tr. 433.)  He did not recommend surgery, but instead suggested continued conservative care.  (Tr. 433.)  Around this time, Plaintiff was following a chiropractic treatment plan (Tr. 127.)

On April 19, 2004, state agency reviewing physician Dr. W. Jerry McCloud, M.D., performed a physical residual functional capacity ("RFC") assessment of Plaintiff.  (Tr. 605-09.)  Dr. McCloud indicated that Plaintiff could lift and carry fifty pounds occasionally and twenty-five pounds frequently; stand and/or walk with normal breaks for about six hours in an eight-hour workday; and sit with normal breaks for about six hours in an eight-hour workday.  (Tr. 606.)  Dr. McCloud further indicated that Plaintiff suffered no limitations in pushing and pulling (Tr. 606), and had no postural, manipulative, visual, communicative, or environmental limitations (Tr. 607-08).

On May 26, 2004, Plaintiff presented to Dr. Neepa Shah, M.D., at Cleveland Heights Medical Center for an evaluation of his back pain and radicular pain down his left leg.  (Tr. 456.)  Dr. Shah noted that Plaintiff was seeking disability benefits and

4

needed a letter from Dr. Shah explaining Plaintiff's condition.  (Tr. 456.)  That same day, Dr. Shah wrote a letter to an unidentified recipient that indicated that Plaintiff "has lumbar spinal stenosis and has chronic lower back and bilateral leg pain," and that "This pain makes it difficult for [Plaintiff] to work."  (Tr. 435. 456.)

On June 11, 2004, Plaintiff presented to Dr. Shah for further evaluation.  (Tr. 454.)  Dr. Shah indicated that Plaintiff reported that his Percocet medication was not helping him.  (Tr. 454.)  Dr. Shah further indicated that Plaintiff's left leg became tender during a straight leg test, but that Plaintiff did not have any leg weakness.  (Tr. 454.)

On November 17, 2004, Plaintiff presented to Dr. Larsen for further evaluation of his back and leg pain.  (Tr. 127.)  Dr. Larsen indicated that Plaintiff was following a chiropractic treatment plan and that surgical options would be considered if the chiropractic treatment did not help his lumbar spinal stenosis.  (Tr. 127.)

On November 18, 2004, another MRI revealed mild to moderate central canal stenosis at the L3-4 vertebrae with associated moderate foraminal stenosis on the left, and degenerative changes in the lower lumbar spine.  (Tr. 256-57.)

On July 19, 2005, Plaintiff presented to Dr. Cheryl Katz, M.D., on referral from Dr. Joseph Totaro, D.O.[2]  (Tr. 258-60.)  Dr. Katz indicated that Plaintiff complained of low back pain that radiated down his leg, with numbness and spasms.  (Tr. 258.)  Dr. Katz's evaluation was consistent with a sprain in the lumbar region.  (Tr. 259.)  Dr. Katz

---

[2] Dr. Totaro appears to be Plaintiff's chiropractor.  (*See* Tr. 251-52, 258, 261-85, 676.)  Neither the parties nor the ALJ discuss Dr. Totaro, but the record appears to indicate that Plaintiff presented to Dr. Totaro between March and September 2005.  (Tr. 261-85.)  But, the record does not appear to indicate whether Dr. Totaro had any opinions on Plaintiff's capacity to work.

indicated that although Plaintiff's gait was not antalgic, Plaintiff had a broad-based

stance and moved slowly because of his pain.  (Tr. 259.)  Dr. Katz recommended that

Plaintiff perform back exercises, stretch, and continue chiropractic care, and prescribed

anti-inflammatory and pain medications.  (Tr. 260.)

On October 9, 2006, Plaintiff presented to Dr. Aaron Smith, M.D., in the

emergency department of Kaiser Permanente with complaints of left lower back pain

radiating down his left leg.  (Tr. 143.)  Dr. Smith's evaluation was relatively

unremarkable.  (Tr. 144.)  Dr. Smith indicated that, although Plaintiff exhibited

"tightness" during a straight leg test, Plaintiff did not exhibit "true radicular pain."  (Tr.

144.)  Dr. Smith issued a "Certificate for Return to Work" wherein he indicated that

Plaintiff could return to work the next day.  (Tr. 146.)

Plaintiff continued to see Dr. Katz through March 2007.  (Tr. 193-203.)  On

October 10, 2006, Dr. Katz indicated that Plaintiff reported increased pain, but had not

been using all of his medications because he did not understand that his medications

were not interchangeable.  (Tr. 199.)  Dr. Katz also indicated that Plaintiff did not have

an antalgic gait, although he continued to suffer mild tenderness in his lower back,

decreased range of motion, and discomfort that increased when he moved.  (Tr. 199.)

On October 31, 2006, Dr. Katz indicated that Plaintiff presented to his follow-up

examination "doing a little better since he changed the timing of his medications . . . and

since [Dr. Katz] increased his ultram ER and vicodin."  (Tr. 198.)

On November 17, 2006, Dr. Katz indicated in a response to the Bureau of

Disability Determination that Plaintiff "continues to complain of debilitating pain."  (Tr.

156.)  Dr. Katz also indicated that Plaintiff was "considered temporarily and totally

6

disabled," but that "this has been discontinued through the Bureau of Workers' Compensation."  (Tr. 157.)  Dr. Katz further indicated that Plaintiff "needs psychological evaluation as well as aggressive rehabilitation and his likelihood of returning to work is slim at best."  (Tr. 157.)

On November 29, 2006, Dr. Katz indicated that Plaintiff presented to his follow-up "doing fairly well with his present med regimen."  (Tr. 197.)

On February 8, 2007, state agency reviewing physician Dr. James Gahman, M.D., performed a physical RFC assessment of Plaintiff.  (Tr. 184-191.)  Dr. Gahman indicated that Plaintiff could lift and carry twenty pounds occasionally and ten pounds frequently; stand and walk with normal breaks for about six hours in an eight-hour workday; and sit with normal breaks for about six hours in an eight-hour workday.  (Tr. 185.)  Dr. Gahman further indicated that Plaintiff was not limited in his ability to push and pull, except as it related to lifting and carrying.  (Tr. 185.)  Dr. Gahman explained that his RFC was adopted from that determined by the ALJ in a disability determination issued on September 8, 2006.  (Tr. 191.)

On February 21, 2007, Plaintiff presented to Dr. Josephine Fernando, M.D., in relation to Plaintiff's Workers' Compensation.  (Tr. 289.)  Dr. Fernando indicated that Plaintiff complained of lower back pain and intermittent tingling in the lower extremities. (Tr. 289.)  Dr. Fernando confirmed Plaintiff's diagnoses of lumbar degenerative disc disease and spinal stenosis.  (Tr. 290.)  Upon examination, Dr. Fernando observed that Plaintiff was not in acute distress.  (Tr. 290.)  Although Dr. Fernando indicated that Plaintiff had painful range of motion and tight hamstrings during straight leg raises (Tr. 290), she also noted a normal range of motion in Plaintiff's hips, symmetric strength,

7

normal gait, and good stability (Tr. 290).

## 2.    Psychological Condition

On August 18, 2004, clinical psychologist Dr. Michael Leach, Ph.D., performed a Disability Assessment Report of Plaintiff's mental condition.  (Tr. 601-04.)  Dr. Leach indicated that Plaintiff reported that he had suffered depression since 2000 but never received mental health treatment, and that he drank one-fifth of brandy a week and considered himself "a drinker."  (Tr. 603.)  Dr. Leach diagnosed Plaintiff with a recurrent, moderate major depressive disorder and alcohol abuse, and assigned Plaintiff a Global Assessment of Functioning ("GAF") score of 59.[3]  (Tr. 603.)

Dr. Leach opined that Plaintiff's ability to relate to others, including fellow workers and supervisors, was "likely moderately impaired;" his ability to understand, remember and follow instructions was "likely not impaired;" his ability to maintain attention, concentration, and persistence and pace to perform simple repetitive tasks was "moderately not impaired;" and his ability to withstand the stress and pressures of work was "moderately impaired."  (Tr. 604.)

On September 1, 2004, Dr. David Dietz, Ph.D., performed a Psychiatric Review of Plaintiff.  (Tr. 611-21.)  Dr. Dietz indicated that Plaintiff had mild limitations in performing activities of daily living; and moderate limitations in maintaining social functioning, concentration, persistence, and pace.  (Tr. 621.)  Dr. Dietz further indicated

---

[3]  A GAF score between 51 and 60 indicates moderate symptoms or moderate difficulty in social, occupational, or school functioning.  A person who scores in this range may have a flat affect, occasional panic attacks, few friends, or conflicts with peers and co-workers.  *See Diagnostic and Statistical Manual of Mental Disorders* 34 (American Psychiatric Association, 4th ed. rev., 2000).

8

that Plaintiff suffered no episodes of decompensation.  (Tr. 621.)

Also on September 1, 2004, Dr. Dietz performed a mental RFC assessment of Plaintiff.  (Tr. 624-26.)  Dr. Dietz indicated that Plaintiff was not significantly limited in his abilities to remember locations and work-like procedures; understand, remember, and carry out very short and simple instructions; perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances; sustain an ordinary routine without special supervision; work in coordination with or proximity to others without being distracted by them; make simple work-related decisions; ask simple questions or request assistance; get along with coworkers or peers without distracting them or exhibiting behavioral extremes; maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; and adapt to the challenges of a work environment.  (Tr. 624-25.)

Dr. Dietz indicated that Plaintiff was moderately limited in his abilities to understand, remember, and carry out detailed instructions; maintain attention and concentration for extended periods; complete a normal workday and workweek without interruption from psychologically based symptoms and perform at a consistent pace without an unreasonable number and length of rest periods; interact appropriately with the general public; and accept instructions and respond appropriately to criticism from supervisors.  (Tr. 624-25.)

Dr. Dietz did not find Plaintiff more than moderately limited in any category of work-related activity.  (Tr. 624-25.)

On December 26, 2006, Plaintiff presented to psychologist Dr. Herschel Pickholtz, Ed.D., on referral from the Bureau of Disability Determination.  (Tr. 161-64.)

9

Dr. Pickholtz opined that Plaintiff's "overall abilities to handle eight-hour work activities relative to speed, consistency and reliability as well as to handle the pressures and stresses of the type of work he did in the past falls within the mild range of impairment." (Tr. 164.)

On February 5, 2007, Dr. Caroline Lewin, Ph.D., performed a Psychiatric Review of Plaintiff and indicated that Plaintiff had mild limitations in performing activities of daily living, maintaining social functioning, and maintaining concentration, persistence and pace.  (Tr. 180.)  Dr. Lewin further indicated that Plaintiff had no episodes of decompensation.  (Tr. 180.)

## C.    Hearing Testimony

### 1.    Plaintiff's Testimony

Plaintiff testified as follows.  Plaintiff was permanently laid off from his last job as a punch press operator because of a lack of work.  (Tr. 669.)  He did not seek out other employment because he felt that his pain and medication would make him unable to perform other work.  (Tr. 671-72, 680.)

Plaintiff injured his back at his last job.  (Tr. 672.)  He submitted a claim for Worker's Compensation on January 22, 2003, and received Workers' Compensation benefits.  (Tr. 672-73.)  Plaintiff suffers back pain that radiates down through his thighs and into his legs, causing numbness in his calves and tingling in his feet.  (Tr. 673.)  He is unable to climb more than ten steps up the staircase at his home because his legs "give out."  (Tr. 674.)  He needs to rest for ten to fifteen minutes before continuing up the staircase.  (Tr. 674.)  Plaintiff is able to walk for only ten to fifteen minutes before he needs to take a ten to fifteen minute break because, otherwise, his legs will "give out."

10

(Tr. 675.)  He cannot walk on uneven surfaces without losing balance; however, he has never used a cane to assist his walking, and he has never fallen.  (Tr. 678-79.)  Plaintiff can sit for only ten to fifteen minutes before he needs to switch positions.  (Tr. 677.)  If he sits for too long a period of time, his calves and thighs begin to "tighten up."  (Tr. 677.)

Although Plaintiff underwent various therapies for his back and leg pain, none of the therapies helped.  (Tr. 675-77.)  Plaintiff considered surgical intervention for his back and leg pain, but his physician warned him that surgery would probably result in an inability to walk.  (Tr. 678.)

Plaintiff did not have difficulty getting along with others at his last job.  (Tr. 677.)  He began feeling depressed and had a hard time getting along with others after he stopped working at his last job.  (Tr. 677.)  He sometimes has problems with concentration; for example, if he intends to take out the trash but gets distracted, he will forget to take out the trash until later.  (Tr. 678.)  However, he does not obtain any treatment for his mental health issues.  (Tr. 681.)

Plaintiff lives at home with his wife.  (Tr. 679.)  Plaintiff sometimes goes out to dinner or basketball games with his wife.  (Tr. 681.)  His wife works, so he spends the day at home alone.  (Tr. 680.)  His wife drives him to physical therapy (although he does have a drivers' license), but sometimes he has to take the bus.  (Tr. 680.)  At home, Plaintiff helps his wife with some of the chores on occasion, such as vacuuming, but his wife does the laundry and has someone else take care of the yard.  (Tr. 683.)  Plaintiff can cook for himself when his wife is not around.  (Tr. 683.)  Otherwise, Plaintiff spends his days reading the newspaper and watching the television.  (Tr. 683.)

11

Plaintiff completely stopped drinking alcohol five years ago without the support of any treatment programs.  (Tr. 684.)

### 2.    Vocational Expert Testimony

The ALJ posed the following hypothetical to the ALJ:

[T]his person would be 51 as of the alleged onset date, and have an 11th grade education, and would have the vocational background identical to that of Mr. Smith.  This person would be at the light level exertionally, by that I mean specifically they could lift up to 20 pounds occasionally, 10 pounds frequently; they could stand and/or walk for six hours out of the eight hour day; they could sit for six hours out of the eight hour day; they could push or pull up to twenty pounds occasionally, 10 pounds frequently; in addition they could frequently climb ramps and stairs; they could not climb ladders, ropes, or scaffolds; and they could frequently stoop; this individual also would be limited to simple, routine work; and they could have superficial interaction with co-workers; and occasional interaction with the public without negotiation or confrontation with either group.

(Tr. 686-87.)  The ALJ further indicated that the hypothetical person could not perform Plaintiff's past relevant work.  (Tr. 687.)  The VE testified that such a hypothetical person could perform work as a bench assembler (1,000 positions in northeast Ohio, 190,000 positions nationally); wire worker (1,200 positions in northeast Ohio, 190,000 positions nationally); and electronics worker (600 positions in northeast Ohio, 95,000 nationally).  (Tr. 687.)  The VE testified that, although the numbers to which he testified came from his experience, the Department of Labor, and the Bureau of the Census, his testimony was consistent with the Dictionary of Occupational Titles.  (Tr. 687-88.)

### III.    STANDARD FOR DISABILITY

A claimant is entitled to receive benefits under the Social Security Act when she establishes disability within the meaning of the Act.  20 C.F.R. § 416.905; *Kirk v. Sec'y of Health & Human Servs.,* 667 F.2d 524 (6th Cir. 1981).  A claimant is considered

12

disabled when she cannot perform "substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 20 C.F.R. § 416.905(a).  To receive SSI benefits, a recipient must also meet certain income and resource limitations.  20 C.F.R. §§ 416.1100 and 416.1201.

The Commissioner reaches a determination as to whether a claimant is disabled by way of a five-stage process.  20 C.F.R. §§ 404.1520(a)(4) and 416.920(a)(4); *Abbott v. Sullivan*, 905 F.2d 918, 923 (6th Cir. 1990).  First, the claimant must demonstrate that she is not currently engaged in "substantial gainful activity" at the time she seeks disability benefits.  20 C.F.R. §§ 404.1520(b) and 416.920(b).  Second, the claimant must show that she suffers from a "severe impairment" in order to warrant a finding of disability.  20 C.F.R. §§ 404.1520(c) and 416.920(c).  A "severe impairment" is one that "significantly limits . . . physical or mental ability to do basic work activities." *Abbot*, 905 F.2d at 923.  Third, if the claimant is not performing substantial gainful activity, has a severe impairment that is expected to last for at least twelve months, and the impairment meets a listed impairment, the claimant is presumed to be disabled regardless of age, education or work experience.  20 C.F.R. §§ 404.1520(d) and 416.920(d).  Fourth, if the claimant's impairment does not prevent her from doing her past relevant work, the claimant is not disabled.  20 C.F.R. §§ 404.1520(e)-(f) and 416.920(e)-(f).  For the fifth and final step, even if the claimant's impairment does prevent her from doing her past relevant work, if other work exists in the national economy that the claimant can perform, the claimant is not disabled.  20 C.F.R. §§

13

404.1520(g), 404.1560(c), and 416.920(g).

## IV.  SUMMARY OF COMMISSIONER'S DECISION

The ALJ made the following findings of fact and conclusions of law:

1.   The claimant meets the insured status requirements of the Social Security Act through December 31, 2009.

2.   The claimant has not engaged in substantial gainful activity since January 17, 2004, the alleged onset date.

3.   The claimant has the following severe combination of impairments: Degenerative Disc Disease of the Lumbar Spine . . . Major Depressive Disorder . . . Mixed Personality Disorder and Alcohol Abuse in remission.

4.   The claimant does not have an impairment or combination of impairments that meets or medically equals one of the listed impairments.

5.   After careful consideration of the entire record, I find that the claimant has the residual functional capacity to perform light work. Specifically, the claimant is able to lift, carry, push and pull up to 10 pounds occasionally and no more than 20 pounds frequently [sic]. The claimant is able to sit up to six hours in an eight hour work day and stand and walk a combined total of six hours in an eight hour work day.  The claimant can perform no more than simple routine work with superficial interaction with coworkers and occasional interaction with the public without negotiation or confrontation.  The claimant can climb ramps and stairs no more than frequently, and can never climb ladders, ropes or scaffolds.  The claimant is not otherwise limited in his ability to perform communicative, manipulative, or environmental functions.

6.   The claimant is unable to perform any past relevant work.

7.   The claimant was 51 years old on the alleged onset date of disability. This is defined in the regulations as an individual closely approaching advanced age.  On July 17, 2007, the claimant attained 55 years of age and his age category changed to an individual of advanced age.

8.   The claimant has at least a high school education and is able to communicate in English.

14

9.      Prior to July 17, 2007, transferability of job skills is not material to the determination of disability because using the Medical-Vocational Rules as a framework supports the finding that the claimant is "not disabled," whether or not the claimant has transferable job skills. Beginning on July 17, 2007, the claimant has not been able to transfer any job skills to other occupations.

10.     Prior to July 17, 2007, the date the claimant's age category changed, considering the claimant's age, education, work experience, and residual functional capacity, there were a significant number of jobs in the national economy that the claimant could have performed.

11.     Beginning on July 17, 2007, the date the claimant's age category changed, considering the claimant's age, education, work experience, and residual functional capacity, there are not a significant number of jobs in the national economy that the claimant could perform.

12.     The claimant was not disabled prior to July 17, 2007, but became disabled on that date and has continued to be disabled through the date of this decision.

13.     The claimant's substance abuse disorder(s) is not a contributing factor material to the determination of disability.

(Tr. 16-25.)

## V.   LAW & ANALYSIS

### A.   Standard of Review

Judicial review of the Commissioner's decision is limited to determining whether the Commissioner's decision is supported by substantial evidence and was made pursuant to proper legal standards.  *Ealy v. Comm'r of Soc. Sec.*, 594 F.3d 504, 512 (6th Cir. 2010).  Review must be based on the record as a whole.  *Heston v. Comm'r of Social Security*, 245 F.3d 528, 535 (6th Cir. 2001).  The court may look into any evidence in the record to determine if the ALJ's decision is supported by substantial evidence, regardless of whether it has actually been cited by the ALJ.  *Id.*  However, the court does not review the evidence *de novo*, make credibility determinations, nor weigh

15

the evidence.  *Brainard v. Sec'y of Health & Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

The Commissioner's conclusions must be affirmed absent a determination that the ALJ failed to apply the correct legal standards or made findings of fact unsupported by substantial evidence in the record.  *White v. Comm'r of Soc. Sec.*, 572 F.3d 272, 281 (6th Cir. 2009).  Substantial evidence is more than a scintilla of evidence but less than a preponderance and is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.  *Brainard*, 889 F.2d at 681.  A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion.  *Ealy*, 594 F.3d at 512.

**B.     The ALJ's Reliance on the Medical-Vocational Guidelines**

Plaintiff argues that the ALJ erred by relying on the Grids to determine that Plaintiff was not disabled when there was evidence that Plaintiff had non-exertional limitations and did not have a high school education.  For the following reasons, this assignment of error lacks merit.

An ALJ may rely on the Grids alone to determine whether a claimant is disabled only when the claimant's characteristics precisely match the characteristics described in the Grids.  *Kirk v. Sec'y of Health & Human Servs.*, 667 F.2d 524, 531, 535 (6th Cir. 1981).  When a claimant's characteristics do not precisely match the Grids, an ALJ must obtain testimony from a VE to determine whether the claimant is able to perform a significant number of jobs in the national economy.  *Damron v. Sec'y of Health & Human Servs.*, 778 F.2d 279, 282 (6th Cir. 1985).  Even when testimony from a VE is required, however, the ALJ may still use the Grids for guidance.  *Kirk*, 667 F.2d at 535;

*Damron*, 778 F.2d at 282.

Here, the ALJ did not rely on the Grids alone to determine that Plaintiff was disabled prior to July 17, 2007.  The ALJ indicated that he used the Grids as a framework, and based his decision that Plaintiff could have performed work that existed in significant numbers in the national economy prior to July 17, 2007, on the VE's testimony.  The ALJ's analysis was appropriate.  Therefore, this assignment of error lacks merit.

###    C.    The ALJ's Hypothetical to the Vocational Expert

Plaintiff argues that the Commissioner's determination that Plaintiff was able to perform a significant number of jobs in the national economy prior to July 17, 2007, is not supported by substantial evidence because, although that determination was based on the VE's testimony, the VE's testimony was based on a hypothetical from the ALJ that did not accurately portray Plaintiff's limitations.  Specifically, Plaintiff contends that the ALJ erroneously failed to include the requirement of a sit/stand option as one of Plaintiffs limitations in his hypothetical to the VE.[4]  For the following reasons, this assignment of error lacks merit.

An ALJ is not required to include all of a claimant's alleged limitations in his

---

[4] Plaintiff also points out that, although the hypothetical to the VE included a limitation that Plaintiff could lift, carry, push, and pull twenty pounds occasionally and ten pounds frequently, the ALJ articulated in his Decision that Plaintiff could lift, carry, push, and pull ten pounds occasionally and twenty pounds frequently.  This is clearly a typo, as these weight ranges correspond to the definition of light work, 20 C.F.R. § 404.1567(b), and the ALJ found that Plaintiff could have performed light work and articulated the former range in his hypothetical to the VE.  Therefore, this error or inadvertent transposition is, at most, harmless error.

hypothetical to a VE; an ALJ is required to include only those limitations that he finds credible.  *Casey v. Sec'y of Health & Human Servs.*, 987 F.2d 1230, 1235 (6th Cir. 1993).  Here, Plaintiff argues only that the record evidence and his testimony support the conclusion that Plaintiff required a sit/stand option to work.  Plaintiff argues an incorrect legal standard, as a decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite conclusion.  The Court could find the ALJ's assessment of Plaintiff's limitations erroneous only if that assessment were unsupported by substantial evidence.  Plaintiff has not explained how the ALJ's assessment of Plaintiff's limitations—and, therefore, the ALJ's hypothetical to the VE—is not supported by substantial evidence.  Therefore, this assignment of error lacks merit.

### D.    The ALJ's Assessment of Plaintiff's Treating Physicians

Plaintiff argues that the ALJ failed to give proper deference to the opinions of Plaintiff's treating physicians, Drs. Shah and Katz, and failed to give good reasons for giving Dr. Shah's opinion less weight than the other medical evidence.  For the reasons set forth below, the Court disagrees.

Although the opinions of treating physicians should be given greater weight than those of physicians hired by the Commissioner, s*ee Lashley v. Secretary of Health and Human Services*, 708 F.2d 1048, 1054 (6th Cir. 1983), such opinions are accorded deferential weight only when they are supported by sufficient clinical findings and are consistent with the evidence, *Cutlip v. Secretary of Health and Human Services*, 25 F.3d 284, 287 (6th Cir. 1994).  If a treating physician's opinions are conclusory and not supported by underlying clinical or diagnostic findings, the ALJ may choose to disregard

those opinions.  *See Landsaw v. Secretary of Health and Human Servs.*, 803 F.2d 211, 213 (6th Cir. 1986).  Moreover, statements from any medical source that the claimant is "disabled" or "unable to work" are not medical opinions, but are rather comments on a determination reserved to the Commissioner and, therefore, are not entitled to controlling weight or special significance.  20 C.F.R. § 404.1527(e); S.S.R 96-5p, 1996 WL 374183, at *1 (1996).

When an ALJ finds that a treating physician's opinions are not to be accorded controlling weight, he must give good reasons for weight he does give the opinions.  20 C.F.R. § 404.1527(d)(2); *Wilson v. Comm'r of Soc. Sec.*, 378 F.3d 541, 544 (6th Cir. 2004).  A decision denying benefits "must contain specific reasons for the weight given to the treating source's medical opinion, supported by the evidence in the case record, and must be sufficiently specific to make clear to any subsequent reviewers the weight the adjudicator gave to the treating source's medical opinion and the reasons for that weight."  S.S.R. 96-2p, 1996 WL 374188, at *5 (1996).

On May 26, 2004, Dr. Shah wrote a letter to an unidentified recipient that indicated that Plaintiff "has lumbar spinal stenosis and has chronic lower back and bilateral leg pain," and that "This pain make sit difficult for [Plaintiff] to work."  (Tr. 435.) The ALJ explained that this opinion did not support the conclusion that Plaintiff was disabled prior to July 2007 particularly because Dr. Shah "did not offer any specific limitations this pain would produce."  (Tr. 23.)  In other words, the ALJ explained that Dr. Shah's opinion was conclusory.[5]

---

[5] Moreover, Dr. Shah's opinion does not articulate that Plaintiff was disabled.  It only articulates that Plaintiff might have difficulty working.

19

On November 17, 2006, Dr. Katz indicated in a response to the Bureau of Disability Determination that Plaintiff was "considered temporarily and totally disabled," and that "his likelihood of returning to work is slim at best."  (Tr. 157.)  The ALJ explained why he did not give Dr. Katz's opinions great weight as follows.  The determination of disability is reserved to the Commissioner, and Dr. Katz's opinion was not supported by her treatment records.  (Tr. 22.)  Although Dr. Katz indicated that she believed Plaintiff was unable to return to his present work, she did not provide any opinion on whether Plaintiff could perform *other* work.  (Tr. 22.)  Dr. Katz's opinion failed to account for the fact that, during an evaluation one month before, Plaintiff reported to Dr. Katz that he had not been using all of his pain medications.  (Tr. 22.)  Moreover, Dr. Katz indicated in her examinations on October 31, 2006, and November 29, 2006, that Plaintiff walked with a normal gait and had normal sensory and motor functioning in his lower extremities.  (Tr. 22.)  In other words, the ALJ explained that Dr. Katz's opinion was conclusory and inconsistent with her own medical records.[6]

Plaintiff merely contends that the ALJ should have given Dr. Shah's and Dr. Katz's opinions more weight because they are treating sources and their opinions support the conclusion that Plaintiff was disabled.  This argument is not persuasive, as it is based on an incorrect legal standard.  A decision supported by substantial evidence will not be overturned even though substantial evidence supports the opposite

_____

[6]  The opinion that Plaintiff was "considered temporarily and totally disabled" does not appear to be Dr. Katz's opinion, but rather the opinion of the Bureau of Workers' Compensation, as Dr. Katz indicated that although Plaintiff was "considered to be temporarily and totally disabled . . . this has been discontinued through the Bureau of Workers' Compensation."  (Tr. 157.)

conclusion.  Plaintiff has not explained how the ALJ's assessment of Dr. Shah's and Dr. Katz's opinions was erroneous.

Because the ALJ found that Dr. Shah's and Dr. Katz's opinions were conclusory and unsupported, those opinions were not entitled to deference.  Furthermore, the ALJ's explanations for why he gave Dr. Shah's and Dr.  Katz's opinions less weight were sufficiently specific to make clear the weight he gave to Dr. Shah's and Dr. Katz's opinions and the reasons for that weight.  Therefore, this assignment of error lacks merit.

## VI.    CONCLUSION

For the foregoing reasons, the Commissioner's final decision is AFFIRMED.


                              s/ *Nancy A. Vecchiarelli*
                              U.S. Magistrate Judge


Date: March 18, 2011

21